30 C.C.P.A. (Patents)

## In re BASQUIN.
## Patent Appeal No. 4739.

Court of Customs and Patent Appeals.

May 3, 1943.

Hoguet, Neary & Campbell, of New York City (Walter H. Free and Byron T. Gardner, both of New York City, of counsel), for appellant.

W. W. Cochran, of Washington, D. C. (R. F. Whitehead, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

GARRETT, Presiding Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming that of the examiner rejecting the three claims, Nos. 26, 27, and 28, of appellant's application for a patent for "Method of Making Air Craft Bodies or Fuselages." The rejection is based upon cited references.

The board quoted claim 26 as embracing a sufficient description of the subject matter. It reads: "26. A method of producing a multiple-ply hollow veneer member having a curved surface, comprising individually assembling a plurality of strips of veneer into substantially edge-to-edge engagement as a layer over a form having a curved surface of the desired contour; temporarily fixing said strips in position on said form; similarly assembling another layer of strips of veneer into substantially edge-to-edge engagement over the exposed surface of the first mentioned layer of strips, with the grains of said strips of said layers at angles to each other and with a film of a heat-responsive adhesive interposed between said layers; temporarily fixing said another layer of strips in superposed relation to the first mentioned layer of strips; similarly assembling at least one additional layer of strips in substantially edge-to-edge engagement on said another layer with films of heat-responsive adhesive interposed between all of said layers until the desired thickness has been obtained, and at all times retaining said layers in assembled superposed relation, subjecting the layers of veneer and films of adhesive to pressure and heat while in said assembled relation on said form to shape said layers into conformity with said form and with each other to cause them to adhere and form a self-sustaining curved body in which the strips of veneer are in edge-to-edge engagement and form continuous webs, each permanently holding the others to the desired contour and having equalized interfacial stresses throughout."

With respect to the other claims we quote the following from appellant's brief, the italics being his:

"Claim 27 is similar to claim 26 with the exception that it includes the additional step of *cutting a plurality of groups of elongated flat veneer strips cut to patterns such that, when the adjacent strips of each group are assembled in edge-to-edge contact, said strips form a continuous web having substantially the contour desired.*

"Claim 28 is similar to claim 27 with the exception that it requires that, when the wood veneer is cut into narrow strips having a combined surface area equal to that of the finished surface, it must have '*a predetermined moisture content*', to assure that humidity changes to which the strips would be subjected will not vary their dimensions and thus preclude or impair the accurate fitting sought by cutting them to proper patterns."

Appellant's brief analyzes the claims and describes the process in minute detail. We deem it unnecessary to quote his entire description. It is summarized at one place in his brief in the following language: "* * * a method embodying the steps of (1) cutting groups of strips of wood veneer to patterns such that when the adjacent strips of each group are assembled in edge-to-edge contact, they

form a continuous web having substantially the contour desired for the finished shell, (2) assembling the groups in such edge-to-edge contact on a form and temporarily fixing the strips in place, each group being assembled on the next preceding one with the grains of the strips of successive groups running at an angle to the grains of adjacent groups, until the desired thickness has been obtained, with said successive layers retained at all times in said superposed relation, with dry thermoresponsive adhesive interposed between the layers, (3) subjecting the superimposed layers, without disturbing them after assembly, to pressure to shape the layers into close conformity with the form and with each other, and (4) applying heat while the layers are so conformed to soften the adhesive and cause the adjacent strips of each layer to be bonded together in such edge-to-edge relation to form a continuous web, and to cause the adjacent layers to be bonded to each other, whereby the finished shell is a substantially homogeneous unit consisting of molded continuous webs each holding the other to the desired contour and having equalized interfacial stresses throughout."

The brief states that the foregoing "paraphrases the substance of the claims on appeal," and we quote same as appellant's own interpretation of his alleged invention. It may be said the examiner's description while couched in different language was entirely consistent with that of appellant. The board gave no description except in connection with features of the references which consist of three patents as follows: Gilmore, 1,394,726, Oct. 25, 1921; Loughead, 1,425,113, Aug. 8, 1922; Norris, 1,999,253, Apr. 30, 1935.

The pertinent disclosures of the references are stated in the brief of the Solicitor for the Patent Office, and the holdings below are paraphrased as follows:

"The patent to Gilmore relates to a method of forming the fuselage of an airplane of a plurality of layers of spirally laid strips of wood, which are placed edge-to-edge. This patent shows the use of two layers with the grains of the strips of the second layer at an angle to the grains of the strips of the first layer. The outer face of the first layer is given a coating of glue before the second layer is laid thereon, which glue upon hardening holds the layers together.

"The Loughead patent discloses the manufacture of curved forms of plywood in which a number of strips are laid side-by-side, or edge-to-edge and are glued or fastened in position. These layers are separately formed and then brought together with a suitable adhesive between the layers and are subjected to pressure before the adhesive has set.

"The patent to Norris relates to the forming of plywood, or compound lumber, glued with a synthetic thermo-setting resin. It points out that the moisture content of the wood must be properly controlled and heat and pressure must be applied to cause a proper setting of the adhesive. It is stated * * * that the plies must be assembled with the resin between them with the rudimentary panel neither too hot nor too dry, followed by the pressing of the assembly and the slow heating thereof.

"The Examiner held that the claims stated no invention over the Gilmore patent in view of the disclosure of the Loughead and Norris patents, stating that while the Gilmore patent showed only two layers of veneer and united these layers with glue, Loughead showed the use of three layers of veneer which, after assembling, were subjected to pressure until the glue set and that the use of a thermo-setting resin, instead of glue as the binder between the layers of plywood, was disclosed in the Norris patent which also taught the control of the moisture content of the wood.

"He also held the claims unpatentable over the Loughead and Norris patents, since synthetic resin glues of Norris can be dried before setting, and therefore, by using such a resin Loughead could have applied his individual strips of the second and third layers to the first and second layers in the same manner as he applied his first layer of strips to the form. He further states that in using the heat responsive resin of Norris in uniting the layers of the Loughead disclosure, it would obviously be necessary to apply heat to set the resin when pressure was applied to the assemblage.

"The Board of Appeals made substantially the same ruling, stating that except for the specific adhesive appellant's method appeared to be substantially the same as that of the Loughead and Gilmore patents, and that appellant's construction could be considered as involving the omission of Loughead's fabric and the use of a dif-

ferent type of glue, which will permit the application of the glue as the strips are formed and a subsequent activation by heat and pressure. It was further stated that such a substitution did not require invention."

It will be observed from claim 26, supra, that appellant describes the element interposed between the layers of strip veneer after they are placed in position as a "film of heat-responsive adhesive," and that the forms are placed under pressure and heat to cause adhesion and complete the shell as a self-sustaining curved body "having equalized interfacial stresses throughout." No statement is found in the claims or in the specification defining the material of which the film of heat-responsive adhesive is composed. In the Norris patent the material for bonding plywood articles is described as fusible resin of the thermosetting type. The specification of the Gilmore patent teaches the interposition of glue between the strips as does the patent to Loughead, but there is no teaching that the glue is heat responsive. The thermosetting resin of the Norris patent, however, is heat responsive and the term obviously is broad enough to cover appellant's adhesive element.

We do not understand appellant to contend that the substitution of the resin of Norris for the glue of the other reference patents would itself constitute invention, but it is argued, in effect, that there are inherent defects in the Gilmore and Loughead patents which could not be covered by such a substitution.

With respect to the veneer strips used in the Gilmore patent appellant points out that they are initially flat and are wound around a curved form. From this it is argued that each of the two layers (Gilmore taught the use of only two layers of strips but it is stated in the specification, in effect, that it was the practice at the time his patent was applied for to interpose a third layer) of Gilmore's shell "would necessarily be formed of a plurality of flat helical strips, which could not possibly form a continuous, imperforate curved shell," and that because of the strips being "twisted like threads on a screw," there would be spaces between them which would remain in the completed shell and render the shell weak and nonuniform in strength. It is also argued that the completed shell of Gilmore cannot have a smoothed-curve

contour because he does not apply pressure to shape them into conformity with the die upon which they are helically disposed, and with each other.

Appellant's principal contention respecting the Loughead patent may be best understood by quoting certain parts of the decisions of the respective tribunals of the Patent Office. As has been indicated, the patent discloses a process of manufacturing curved forms of plywood in which there are a number of layers of strips. In the statement of the examiner following the appeal to the board the following appears: "Loughead applies strips of material diagonally over a form to make the first layer 3, then individually shapes the second and third layers 5 and 7 over the first layer 3, removing the layer 5 from the layer 3 before applying the strips for the layer 7 over said layer 3, then removing the layer 7 from the layer 3 and positioning the layer 5 over the layer 3 and the layer 7 over the layer 5 while interposing glue and a fabric between the several layers. Loughead then applies uniform pressure to the assemblage of the three layers of strips as stated in the first full paragraph of page 2. Instead of applying glue to the strips constituting layers 5 and 7 as they are shaped over the preceding Layer 3 as applicant does, Loughead shapes each of the layers 5 and 7 over the layer 3 as stated above and then applies a film of glue between each of the layers 3, 5, and 7. He did this because he thought that the glue would set before it was possible to apply the strips forming the final layer."

The board said: "In considering the Loughead patent, it seems to be appellant's view, which has apparently been accepted by the Primary Examiner, that the intermediate layer of veneer is removed from the form before the final layer is built up. The specification is somewhat ambiguous with respect to this matter. It is clear from lines 87 to 90 that the second layer is laid up on the first and then temporarily bonded together by strips of tissue paper or thin cloth. In lines 95 and 96, it is stated that the layer may be removed from the mold and is ready for use as a unit. As we construe this passage, however, we do not believe that actual removal takes place until all of the units have been laid up. This seems to be borne out by the claims which require the erection of super-

posed layers followed by separating the unitary layers and then adhesively securing them, one upon the other, in complementary relation. The building-up procedure appears to us to be substantially the same as that employed by appellant. Appellant, by the use of a different type of adhesive, is enabled to coat the layers as formed, whereas in Loughead, the coating is done only after all layers have been formed."

As we understand appellant's argument respecting the foregoing matter, it is that the board erroneously construed the patent, and that if appellant's view (apparently approved by the examiner) as to certain of the intermediate layers being removed before the formation of the succeeding layers be accepted his process would be patentable over the process shown by Loughead, and the emphasis which he places upon this feature has led us to state the findings above quoted.

We are unable, however, to agree with the appellant upon the point so made. The brief of the Solicitor for the Patent Office states: "As to the Loughead patent, it is not deemed necessary to discuss the question whether the second layer is removed after it is built up on the first and the third layer is built on the first, as argued by appellant, or the third layer is built on the second, as stated by the Board of Appeals. In either case, there is a clear disclosure of the building up of a shell of three layers and the removal of the layers before applying the glue was necessary because the glue would set, if applied to fasten the first layers before it was possible to complete the third. This would not be true if the thermosetting resin of the Norris patent were used. That adhesive could be applied as the layers were completed and heat then applied when the assemblage is subjected to pressure."

We approve the statement so made.

Another feature upon which appellant's brief places some emphasis is what may be designated as control of "moisture content." Both Gilmore and Loughead used wet glue as an adhesive, while appellant uses a heat-responsive adhesive. As has been indicated, this feature of appellant's process appears to be fully met by the Norris patent.

All the differences between the processes of the prior art and appellant's process mentioned in his brief have received our careful attention, but we are not convinced that the improvements which he claims to have made are patentable over the art cited.

The decision appealed from is, therefore, affirmed.

Affirmed.